May it please the Court. I'm Anthony Colangelo for Appellant Larry Bollinger. I will address the constitutionality of Section 2423C and F1. Mr. Scheer and I have decided that we do not plan to address the sentencing issue. We believe it's fully briefed, but Mr. Scheer is ready to address any questions the Court may have on that issue. Because the District Court in this case upheld the statute under the Necessary and Proper Clause, I thought I would address that first and then move on to the Foreign Commerce Clause with the Court's permission. Our basic argument is that to uphold the statute on either rationale would effectively arrogate to Congress unlimited regulatory authority, utterly defeating the axiom of a government of limited and enumerated powers. The District Court's decision relied on the necessary and proper power of Congress. In response to that last question that I wanted to ask, doesn't Congress have the authority to execute laws in support of the treaties that have been approved by the government? Absolutely. So Congress has the power under the Necessary and Proper Clause to effectuate treaties. And the question is, what relationship do those laws, what relationship must those laws bear to the treaty? And courts that have addressed this question have said the implementing legislation must track the treaty language in all material respects with respect to the offense elements that are outlined in the treaty. So basically, in this context and in every other context in which the United States implements international conventions that criminalize activity and that require states' parties to criminalize that activity, the treaty set out the offense elements of the crime. And the implementing legislation then reflects those elements of the crime. And if you look at U.S. implementing legislation with respect to all, with the exception of this case, I would say, legislation that implements treaties, the implementing legislation, in fact, does track the treaty language. And sometimes it even just incorporates it by reference. This is a completely different case. In all the other cases, the implementing legislation, it's pellucid that it tracks the treaty. It's pellucid that it's implementing the treaty. It matches up almost exactly. In this case, the treaty language doesn't even appear in the statute at all. There's no terminological equivalence whatsoever. It just invents a brand-new offense. The treaty language, the treaty that's at issue here is the optional protocol for the Convention on the Rights of the Child for the sale of children, child prostitution, and child pornography. The offense elements that are set out in Article I and Article II are all about transactions for remuneration or any other consideration for sex, child prostitution for remuneration, or any other form of consideration. Here, that's just simply not the offense that Congress prescribed. It's non-economic. It's non-commercial. That's what Mr. Bollinger is being prosecuted for. It's not as though it's wholly unrelated, right? I mean, you make it sound like the offense conduct here is, you know, like passing a gun in commerce or something. I mean, they obviously are related. The treaty is concerned with exploitation of children. The offenses are about things like prostitution. But you can imagine that prohibiting even non-commercial sex with children would help to prevent prostitution and would make it easier to enforce the bar on prostitution. These are not unrelated concepts. No, no, and I'm not arguing that they're completely unrelated. But my argument is that, first of all, as a matter of practice, this clearly was not implementing the optional protocol. I mean, if you look at the implementing legislation that Congress passed to implement treaties, it looks nothing like this. I mean, this was passed pursuant to the Foreign Commerce Clause. But then the question is, okay, well, even so, is there a way to uphold it under the treaty power under the Necessary and Proper Clause? And then what is the relationship that the statute must bear? And the treaty has to place some constraints on what Congress can legislate. I mean, the subject matter of the treaty and the text of the treaty, there's some flexibility, definitionally, that Congress enjoys to translate it into U.S. law. But Congress can't add, for example, substantially different elements of the offense, which is what's going on here. And I would just point out, you know, we're a party to over 700 multilateral treaties and over 8,000 bilateral treaties that cover virtually every aspect of our lives. There's got to be some limit because otherwise, going back to the axiom of limited and enumerated powers, I mean, if we were to uphold this statute under the Necessary and Proper Clause, Congress could always find a treaty to regulate whatever it wanted to based on the treaties we have on the books. Yeah, can I ask you just a question about that and sort of how concerned we should be? In cases like Bond, other treaty power cases, like the animating concern for the courts when they require this kind of tight nexus is that otherwise, Congress would be able to sort of invade what ought to be state prerogatives, right? They're concerned about federalism and congressional overreaching vis-a-vis the states. But that's not really a problem here, right? So what are we concerned about? We're going to get too much in Haiti's business? Is there an argument that we might ask that the relationship maybe could be a little bit looser in a case like this where there are no state sovereignty interests to worry about? Sure. The idea being that when we're talking about regulating outside of the United States, maybe there's even more flexibility. But then you'd have to build in a limiting principle somehow that doesn't exist presently. There would have to be a rational relationship, as I think there probably is in this case. The principle would be that Congress, under the treaty power, can implement legislation that is rationally related in a way that is different from implementing legislation that operates within the United States. Like a real rational basis test. That's a distinction that doesn't exist in law. I mean, the problem in Bond was that the Chemical Weapons Convention, the legislation in Bond tracked the language of the Chemical Weapons Convention, and the concern was we're worried about federal override of the states. But here, I mean, there's nothing that would prohibit then Congress from enacting this law and overriding the laws of the several states. Currently in the law, I mean, you could invent something that said, no, there's a difference. But presently in the law, there's no difference between Congress's treaty power to pass legislation, implementing legislation. And in fact, I mean, all of the treaties, the reason why they require implementing legislation is so that the states' parties pass that law with respect to their own domestic jurisdictions. I mean, here it's true that we're asserting jurisdiction based on the nationality principle that we have a U.S. citizen. But all of the implementing legislation is designed to address domestic concerns. So if Congress were faithfully implementing the optional protocol, this legislation would have to apply within the United States to satisfy our international obligations. So I'm not sure that that's a really helpful distinction because I think it would not limit Congress whatsoever. If there's nothing more on the treaty power, I'd like to move on to the Foreign Commerce Clause. I realize I don't have that much time. But similarly, the argument for the Foreign Commerce Clause is to uphold the statute on the Foreign Commerce Clause would effectively give Congress unlimited regulatory power over anyone who ever crossed state or international lines. I mean, there's a reason why there's no domestic analog to 2423C. In other words, under the PROTECT Act, 2423B says if you cross interstate lines with the intent to commit illicit sexual abuse, we can prosecute you. If you cross international lines and travel in foreign commerce with the intent to commit illicit sexual acts, we can prosecute you. 2423C, as you know, got rid of that intent requirement. And the whole reason why there was an intent requirement was because it was a regulation of the use of the channels and instrumentalities of commerce. Congress was regulating that use and the improper intent was the hook to that use, to actually regulating that movement. Here, 2423C was designed to get rid of that intent requirement and only requires travel in foreign commerce and then at some later point, and it could be according to the courts, months and even years down the line, you engage in purely local activity, a purely local illicit sexual abuse. Now, the reason that that would not be constitutional if we had it in the domestic system would be it would effectively eviscerate any limitation whatsoever on Congress' regulatory authority. Pretty close to SORNA and the registration requirement, right, that once you cross state lines, you have to register. And we've upheld that against precisely that argument, that if we upheld it, that would mean there would be effectively no limits on how Congress could regulate. With all due respect, I think SORNA is distinguishable. And, in fact, I think the court itself, according to the opinion in Gould, the Fourth Circuit opinion in Gould, did distinguish SORNA from this type of argument. On page 471 and 472 of the opinion, and I quote, Gould contends, however, that because Section 2250A does not mandate an access between the act of failing to register and interstate travel, the statute invokes unlimited power because almost everyone at some point travels in interstate commerce. He argues that the mere fact that the individual has at some point traveled in interstate commerce does not establish that his or her subsequent failure to register substantially affects interstate commerce. But SORNA is not so expansive, says the court. It requires additional elements and a specific sequence to satisfy the commerce component. A sex offender must have been convicted of a qualifying sex offense and, after conviction, traveled to another state and failed to register and maintain his registration. And there must be a conviction that gives rise to the registration requirement, subsequent travel, and failure to register. So you're talking about a unique class of individuals. And then the court then went on to say this power to regulate the movement of convicted sex offenders, this particular class, stems also from Congress's ability to create comprehensive national regulatory schemes among the states. Congress, under the Foreign Commerce Clause, let me just say, comprehensive national regulatory schemes among the states and reach local conduct that threatens to undermine those schemes. The Foreign Commerce Clause is terminologically different than the Interstate Commerce Clause. It gives Congress the power only to regulate commerce with foreign nations. Congress does not have the power to create comprehensive global regulatory schemes among the nations of the world and reach local activity that threatens to undermine those schemes. If you have nothing else, I'll sit down. Are you out of time? No, he's not out of time. Oh, no. I have tons of questions. Are you suggesting that Congress has less power under the Foreign Commerce Clause than under the Interstate Commerce Clause? Is there any case law support for that? I thought that the Supreme Court had said the opposite. Right. So the Supreme Court has said the opposite in the dormant interstate and foreign commerce contexts. So the Supreme Court case law, stemming from a line of cases that originates with the Japan line in 1979, dealt with the question of when state law sufficiently interferes with the foreign commerce power so as to be invalidated. And I would contend that actually in that case stands for the proposition that Congress has less power to regulate abroad, and I'll tell you why. Okay, so in the courts, that case involved an ad valorem tax on Japanese shipping containers in California. Under the Interstate Commerce Clause, under the Commerce Clause generally, it would be a violation to double tax the shipping containers. Under the dormant Interstate Commerce Clause, this ad valorem property tax would have been perfectly constitutional because the court, according to the Supreme Court, said we can fairly apportion the tax so that if another state in the United States had taxed the shipping container and then California taxed the shipping container, we can apportion that tax. We have that power as the federal government. But because in Japan line the other taxing entity was not a state, it was a foreign nation, the court said our hands are tied. Japan, as a sovereign foreign nation, has the power, in fact, and in law, under international law, to tax the shipping containers at their full extent. Therefore, if California had taxed the shipping containers again, it would result in double taxation violating the Commerce Clause. So the Supreme Court has been clear about two points in that case, right? The two important points are, one, when we're talking about the foreign commerce power and the court's statements that the foreign commerce power is broader than the interstate commerce power, all of those statements, every single one, come in the context of foreign, a federal power vis-a-vis the states. And it's uncontroversial that when it comes to foreign affairs, the federal government speaks with one voice and has stronger power to invalidate state action. So that makes perfect sense. There's nothing remarkable about it. But the reason we care is because you don't want the states interfering with what the court has said a hundred times, is this extremely broad federal power when it comes to foreign affairs. I mean, Congress could, if it wanted, just eliminate all travel to Haiti, right? No one goes to Haiti. I don't know the answer to that question. I know there's a fundamental right to travel. I don't know what the contours of it are. It would run up against that. We had this with Cuba, right? Right. So that's something I'm sort of not prepared to address. Okay, okay. But I guess what I'd like to reiterate about Japan Line is the reason why. I'm sort of past Japan Line, if that helps you at all. I guess I'm just thinking of all the times the court has said that federal power is at its zenith, its maximum when it comes to foreign affairs. And I guess I'm just not understanding why that kind of thinking about the forest and not the trees for a minute, why that wouldn't include a federal interest in not having United States citizens travel abroad to sexually abuse children in other countries because that is going to make trouble with other countries. That is a foreign affairs problem. The states may not regulate it. The only entity that can regulate it is the federal government. And now you're saying the federal government can't regulate it either. What are we supposed to do when our citizens keep going overseas to rape children in other countries and that creates all kinds of international problems? You're saying no one can regulate it. May I respond? Yeah. Okay, so the two answers are, one, all of the cases that you're talking about with the federal government being able to speak with one voice and regulate foreign affairs, that regulation is domestic and it's vis-a-vis the states. The broader power to regulate foreign affairs is vis-a-vis the states. And there's no doubt that the federal government has huge authority to regulate domestically in the United States for issues that touch upon foreign affairs. When the federal government regulates extraterritorially, where the effects will be most direct, it still has to find something in the Constitution that authorizes that regulation. And that just simply doesn't exist here. Now, there are ways to do that. There's the treaty power. I mean, we could enter into a treaty prescribing this conduct and then pass legislation. I mean, that's exactly what the framers of the Constitution had in mind if you go back and read the drafting history. There's no doubt that Alexander Hamilton and Thomas Jefferson thought if we were going to regulate inside foreign countries, the way to do it was through the treaty power. The Foreign Commerce Clause was all about foreign commerce coming into and out of the United States domestically. There's also the power to define and punish offenses against the law of nations, piracies and felonies on the high seas. These are all explicit enumerated powers in the Constitution that authorize the government to legislate extraterritorially. To uphold this statute on any other rationale would gut those other enumerated powers. Thank you. Ms. Ray. Thank you, Your Honors. May it please the Court. The District Court in this case properly denied the defendant's motion to dismiss because the statute under which he was convicted is properly enacted under either the Foreign Commerce Clause or the Necessary and Proper Clause. Just going immediately to Judge Harris's questioning of the defendant, the proposition that the federal government, just sort of seeing the global picture in this case, is can the government through the channels of foreign commerce, regulating the channels of foreign commerce, preclude or punish a United States citizen that goes to another country and sexually abuses children. Now, with respect to the Foreign Commerce Clause, regardless of what its precise contours are, it reaches the channels of foreign commerce. It reaches the instrumentalities of foreign commerce. And in this case, that is what this statute regulates. It regulates the travel first. A person has to travel through the channels of foreign commerce and then commit an act that is unlawful in this country. If what he did occurred in this country, it would be unlawful. But it doesn't matter. The Congress has the right through the regulation of the channels of foreign commerce to reach this conduct. Second, and I want to go to both the SORNA case as well as 2423B. I think part of what my assessment of the defendant's argument is that it ignores kind of the whole statute. It's focusing on one small part of it, but the entire statute does address commercial sex acts as well as non-commercial sex acts. And it involves in Subsection B, we have the intent at the time of travel. In Subsection C, we don't have to prove that intent. Congress enacted Subsection C recognizing that it was too difficult to reach the conduct that it wanted to if it had to prove intent at the time of travel. So it enacted Subsection C, which requires the subsequent act, not just intent. So the Foreign Commerce Clause, even if it's I think the best interpretation of all the decisions, is that it is a broader authority. But even if it is restricted to the contours of the Interstate Commerce Clause, the Congress still had the authority in this case because it regulated the channels of foreign commerce. So if you take that broader view of it, then what's the limiting aspect? I know it's not the case here, but what's the limiting aspect of the substantive offense? It could be any offense. You think that they could say spitting on the sidewalk along the Champs-Élysées in Paris would be illegal to prosecute you when you come back to the United States for doing that? Right. I think short of something that might violate other parts of the Constitution, for example, free speech or equal protection or something like that, there wouldn't be. Now, we have a representative government. Congress passed this law. Presumably if Congress passed a law that said you travel in interstate commerce and spit on the sidewalks of Paris, we could get you. It's not at all clear to me that that's a feasible possibility, but I don't think that there's any real constitutional limitation. If Congress has the right to regulate the channels of foreign commerce, which it does, it may say United States citizens, you may not travel in foreign commerce and then engage in conduct that Congress deems objectionable enough to prescribe. There has to be some nexus to foreign commerce, right? If not a substantial impact, it has to have at least some rational basis, doesn't it? I suppose it does, although let me just say that there are three possibilities under the Interstate Commerce Clause, right? Channels, instrumentalities, and substantially effects. Our weakest argument is under substantially effects, although I think we win under all three. But Lopez and Morrison, for example, were specifically under the substantially effects clause. And the decisions such as SORNA that look specifically, and this Court's decision in Gould that looks specifically to the channels and instrumentalities, do not have the same requirement of an effect on interstate commerce. But it has to be rational. I mean, everything has to be rational under the due process clause, right? Sure, I agree with that, Judge Harris. Sure. I absolutely agree that there's got to be some sort of rational, reasonable justification for the prescription. And in this case, clearly it is. And that sort of segues into the necessary and proper clause. And I want to make really clear here that the preamble to the optional protocol specifically talks about the exploitation of children and encourages the signatories to that treaty to address it in a holistic matter, and it talks about improper adult sexual behavior. So this is not a protocol that says, you know, you may only regulate or prescribe commercial sex acts. It's one that encourages a broad approach, and it encourages state signatories to pass legislation that addresses not only commercial sex acts, but also the exploitation of children, which this statute unquestionably does. And it does prescribe commercial sex acts as well. It doesn't just prescribe the kind of behavior that Mr. Bollinger engaged in, but it also does prescribe commercial sex acts. It establishes yes, Judge Hamilton. Let me ask you this. Now, the government has conceded that the act of Mr. Bollinger was a non-commercial act. Isn't that correct? Yes. The government conceded in the district court that that was the prong under which it was proceeding, that it was not going to attempt to prove a commercial sex act. All right. Let me ask you this, which is a little bit troubling to me. Take a student who graduates from college and he moves to Germany and never comes home. He's there for 20 or 25 years and then engages in a non-commercial sexual act with a minor. Can this student be prosecuted under Section 2423C as it relates to the Foreign Commerce Clause? I'm thinking about that, Judge Hamilton. I think that there is no – well, I think that we would not be able to show the – he used the channels of foreign commerce. There has to be some – there's no temporal limit in the statute. The government would concede to that. There's no temporal requirement between the time of the travel and the act. However, we've also never had a case where it was anywhere close to 25 years. So that's a much – I think that's a harder question, but I think that probably not. I would be surprised if it were able to be used in that way, but I would say that in this case we have Mr. Bollinger traveling a lot more recently. And SORNA, this case decision in Gould, recognizes in the other SORNA cases that there doesn't have to be a temporal limit for it to be constitutional under the Interstate Commerce Clause in that case or in this case under the Foreign Commerce Clause. Well, let me ask you this. Where do you draw the temporal line? Is it a week? Is it a month? Is it years? Where do you draw the line? The cases that, for example, in SORNA have recognized that it can be at least months. And I don't know that there really is constitutionally required a temporal line. It may be as a matter of statutory construction we can look at it and say, well, Congress wouldn't have intended someone to have permanently moved. And one of the things that the government did in this case was to check and make sure that Mr. Bollinger did maintain a home in Gastonia. He had contacts. He returned regularly. This isn't a case of an individual who actually moved permanently to the country. The other thing I would – Well, I'm not talking about somebody who moves to Germany and establishes his citizenship there. Right. And I think you've answered my question, which is a difficult one. Where do you draw the line? I don't know that I can answer a specific I have – you know, it's five years or it's two years or it's six months. And I don't know that the Constitution requires a temporal connection. There's no case law that suggests that the channels, if one is using and relying on the channels part of the authorization under the Foreign Commerce Clause or Interstate Commerce Clause or the instrumentality section, that there's a temporal requirement. There's no case that suggests that there's a temporal requirement other than that travel has to have occurred after the legislation was enacted. There are cases that establish, and it was one of these under – I believe it was 2423B where a gentleman went to Cambodia and moved there, but he did it before 2423B. His travel was before that was enacted. The travel with the intent has to have occurred after the statute was enacted. But other than that, I know of no other limitation, certainly that's been recognized in the courts. Now, we haven't had that case where it was 30 years later, so perhaps that would be the case that would require a recognition of some kind of reasonable limit. But this case certainly is not that. And in order to establish a facial challenge, of course, the defendant has to show that the statute is unconstitutional in all of its applications. And so in this case, it is a perfect example of why it's constitutional, at least as regards to him, and therefore it is not facially unconstitutional. That's the problem. You know, we have to be careful in cases where we all agree that the offense involved is absolutely horrible and horrific, terrible. But that's when we have to be careful because, you know, we adjudicate, we legislate, and maybe perhaps we prosecute based on our common sense of rightfully so, offended at it. But the constitutional principles – In Gould, I had some involvement there. But there, the person was already involved in being required to register somewhere, and they were already sort of, quote, in the system, end quote, and that leap didn't require that intent. It was that presumptively you know you have to register. When you go someplace else, even though we can't, there's no evidence to view intent, you're within the penumbra, if you will, of the shadows of someone who would leap there. But here, as Judge Hamilton asked, there is no temporal restriction at all. As a matter of fact, and you'd agree, if you canoeed your way to a foreign country, you'd be okay. Sorry. I was just imagining canoeing to a foreign country. It's only 90 miles across the Florida streets. I'm a Floridian by birth, so I'm aware. In fact, I had friends that did privately boat places. But anyway, to other countries, yes, I would agree. I certainly concede that. Now, with respect to the distinction that the defendant draws with SORNA, that you have to have been convicted, I don't think that's a distinction with a meaningful difference. And the reason is because the reason that the conviction is important in SORNA is because that triggers your requirement to register. We all have a responsibility and a legal duty not to sexually abuse children. So that already exists. I don't need a law to tell me that I'm able to do that. It's something that exists. And I do appreciate that our constitutional jurisprudence and, for that matter, our prosecutorial discretion should not be exercised solely because we find something repulsive, offensive, horrible. However, sort of the question in this case, though, is if a United States citizen travels through interstate or foreign commerce and commits a violent crime or a sexual crime, is that the kind of thing that Congress can reach? Is that within the realm and the authority of the Foreign Commerce Clause or with respect to the Necessary and Proper Clause as to the optional protocol? So we're not talking about the offensive behavior driving the statute. The statute is designed to prohibit United States citizens from engaging in commercial sex acts or abusing children. It's not really one of those cases, I don't believe, where we have constitutional jurisprudence that's being driven by an abhorrent act. We have Congress reasonably enacting a statute to address a problem that, if we don't address it, could reasonably cause problems with other nations. If our citizens may go into particularly the most impoverished countries, Haiti the most impoverished country in the Western Hemisphere, and with impunity engage in this kind of conduct, it will undermine the efforts of the international human rights community and nation states from prohibiting the exploitation and commercial and non-commercial abuse of children. So I don't think this is a case where that broader concern that we've got a terrible act and that's going to cause our Foreign Commerce Clause jurisprudence to go off the rails. This statute falls in the heartland of what the Foreign Commerce Clause permits Congress to regulate. I mean, what they're regulating, right, is there's a whole industry around this, a sex tourism industry. That's what they're after. Yes, and I think that that's one of the things that maybe I didn't do. Well, I don't know if our brief really made this point adequately enough, because we were focused so much on kind of channels, instrumentalities, but there's no question but that the trafficking of young girls in particular is an economic activity. And if one doesn't stop not only the economic activity but also the non-economic sexual abuse, then that undermines the statute. I want to just make one other point, and I would refer the Court to the Supreme Court's decision in Gonzalez v. Reich where you have Congress recognizing, or the Supreme Court recognizing rather, that where an act is addressed, it's sort of a broad economic activity. In that case, the Controlled Substances Act. Even if a small part of it does not regulate specifically economic activity, but the regulation of the non-economic activity is important to the regulation of the economic activity, it's constitutional. May I ask just a hypothetical? What if you went to a country that under their laws clearly you can marry someone that's 12 years old and a person uses the channels of interstate commerce, not interstate but foreign commerce, and they travel over there, and they legally marry a girl that's 12 years old and is performing their religious function, and they come here, they could be prosecuted under statute, correct? Assuming they consummated that marriage in a way that would constitute illicit sexual conduct, yes. And appropriately so. Even though they're married and by the laws, the religious and state laws of that country? I don't think that there's any exclusion or exception. And Judge Hamilton, I saw you raise your hand, so I want to... I'm going to give way to Judge Hamilton. Go ahead, but... No, go ahead. All right. Even though there was... I don't know of any exception to this statute based on whether or not the person marries. I don't think that there is an exception, and I don't think there has to be an exception. It is still illicit sexual conduct with a minor. What does illicit mean, illegal? Well, it's defined. I mean, it's defined in the statute. And then the gravamen of the definition illegal? It is a sexual act, and it's a sexual act that's specifically defined in the United States Code. So it requires sexual abuse of a minor. What makes it illicit is that it's illegal. I understand that, and what I'm suggesting is that I don't know whether... and it's legal there. That does not make it legal here. So you mean all those people out in the prairie days that went across the West in the covered wagons who married people, when they were 12 and 13 and they had gone over to England, they would have been prosecuted as pioneers in America? If the British government had enacted this statute under its Foreign Commerce Clause and it had the same contours, yes. But that's one of the problems you have when you go so far, and that is now you're meddling. Now you're not. You go from one in terms of you're protecting another, and now you are using the United States policy as the world should comport to ours. In many cultures, a 12-year-old person, once they reach the age that they're able to reproduce, I mean, because you wonder why do human beings have the ability to reproduce at 13 if they can't marry? I mean, nature has a way of answering questions that mankind tries to override by laws. You're smiling, but that is a legitimate question, isn't it? I think your question, the presumption that a 13-year-old girl should... I didn't say should. I understand, and I recognize that, Judge Gregory. I guess what I'm saying is the suggestion that because she's capable of bearing children, it means that we cannot criminalize or that a country can... No, I didn't say you cannot. The United States can do what they want to do. But on the other hand, how can you say another country can't when we used to do that ourselves? Right, but we're regulating the conduct of United States citizens. We're not regulating the conduct of someone, of a young girl in Thailand. We're re-regulating the person from here, the adult citizen who goes to Thailand and sexually abuses that child whether or not they go through a marriage ceremony. To permit a marriage ceremony to take someone and make them immune from this statute would be another way of undermining quite well the international efforts to address human trafficking. It can't simply be that engaging in a local wedding means that... And I see that my time is up. I'm going to give Judge Hamilton a chance, but don't worry about that. Go ahead, answer Judge Hamilton's question. I have difficulty with that proposition you're making. Suppose this man goes to not a third world country, but let's say Germany since we're talking about it, and under German law he marries this 12-year-old girl before there's any sexual conduct whatsoever. Now, once that marriage takes place, how can the consummation of it be considered illicit sexual conduct? Let me back up and say, first of all, I think the answer is, if it's defined as illicit sexual conduct in the United States Code and it's prohibited as such, then the United States Congress has the right to reach that conduct engaged in by a United States citizen, and the fact that they marry under local law does not provide immunity from that prosecution. I don't honestly know because I haven't looked specifically at the contours of that definition with respect to legal marriages. I have not looked up this question to see whether or not somehow there's an exception in Section 18 U.S.C. 2246 or Chapter 109A. I've not looked at that to see whether there's an exception for a local marriage. I'd be surprised if there is, but perhaps there is. If there is, then it doesn't come within the confines of that statute and it's not prohibited. Just on the same subject, though, there's no question, right, that the conduct charged here was illegal in Haiti, right? Absolutely. So could this wait for sort of an as-applied kind of a challenge? Yes. Thank you, Judge Harris, for bringing me back to sort of the it's a facial challenge point. As long as it's constitutional under any factual scenario, then the defendant's challenge fails. And in this case, this is a good example of why it is constitutional. And so the government respectfully requests that the court affirm the district court's dismissal or rather denial of the defendant's motion to dismiss. I have one very short factual question I'm interested in. So you charged under the noncommercial prong, but you also said in the response to the motion for particulars that you thought you could prove bartering. If there were bartering, would that still be under the noncommercial prong or that I'm just trying to figure out what was going on with the bartering in this case. Right. I mean, I think that the decision that we made was that we there's there certainly we might have been able to prove that the part of why they engaged in this conduct was because Mr. Bollinger and his wife were feeding them. I assume and I believe it we could have proved that that would be a commercial sex act. But I in this case, we determined that we would not try to make that case. That's a difficult case to make when your witnesses are young girls in Haiti, et cetera. And Mr. Bollinger was someone I think the record establishes that had the support of a fair number of folks down there. All right. Thank you, Your Honor. All right. Angel, you have time reserved. Thank you. I must say I was pleased to hear the government concede that under its theory, there is no limiting principle for what Congress can regulate after you travel in the channels or instrumentalities of commerce. I think that that's the necessary and inescapable conclusion of the theory. I mean, the government said in this exact language that you travel in the channel of interstate foreign commerce and then everything you do thereafter, Congress can regulate. There is no limitation on what Congress can do. Now, here's the problem. Channels of commerce go, channels of foreign commerce leave the United States and go to foreign locations. They also come back into the United States. Does that mean that Congress can regulate everything you do once you return to the United States? It sounds like it to me, too. Instrumentality, you've got to come back home. That's right. And in United States v. Morrison, the Supreme Court explicitly said that violent sexual assault was not economic activity subject to the Commerce Clause. That conduct does not qualify as commerce for purposes of Congress's power to regulate commerce under the Constitution. Under the government's theory, you're essentially transforming something, sexual assault, that the Supreme Court has already said is not commerce, into commerce. Well, well, well, but then in Raich, right, the Court said, well, but in Morrison, it wasn't part of a larger regulatory framework. And here it clearly is. Right. So Morrison has kind of been narrowed by Raich. Well, Gonzales v. Raich did not apply to this case. That rationale cannot apply to Congress's powers to regulate commerce with foreign nations. A careful reading of that opinion, with all due respect, shows that the Supreme Court, at various points, repeatedly described the commerce power there as Congress's power to create comprehensive national regulatory regimes among the several states. And the power to create those comprehensive national regulatory schemes gave rise to a derivative power to reach purely local conduct that threatened to undermine those schemes. The Foreign Commerce Clause does not give Congress the power to create, to regulate commerce among the nations of the world. Congress does not have a power to create comprehensive global regulatory schemes over international markets. If Congress wants to engage in that type of regulation, the Constitution prescribes the way. It's the treaty power in the Necessary and Proper Clause. And that is not what Congress did here. And I would also, with all due respect, object to altering the facts in order to make this case fit into some commerce rationale. This was non-commercial. This was non-economic activity, unlike in Gonzales v. Raich. So even if you were to somehow conclude that Congress has a comprehensive international regulatory regime to regulate economic activity everywhere in the world, it still wouldn't qualify under that line of cases. And going to the treaty, I would also just like to point out, as a matter of treaty law, the preamble is not what's binding. It's not the law. Treaties are essentially contracts between nations, and they're negotiated. The preamble or the chapeau are the nice political statements that precede the legally binding text. The legally binding text of the treaty is in Article I, Article II, and Article III. And those articles are, again, elusively clear that this negotiated contract deals exclusively with commercial sexual activity, child prostitution, transactions quid pro quo, where there's economic component to it. And that is emphatically not what happened here. If, taking up the line of questions that Judge Gregory and Judge Hamilton were posing to the government, if Congress, if the international community and other states wanted to prohibit this conduct and implement it in domestic law, they could have done so. I mean, they could have done so. And my suspicion is that given the variances in culture in terms of marriage laws and different ages of forming familial relationships and all sorts of things, that that was not a matter of consensus for the international community. And I absolutely agree with the proposition that in an effort to aggressively go after sex offenders, which is admirable, I don't think anyone disagrees with that, we may actually be creating more foreign relations frictions than helping. And there are also extradition treaties with these other countries. I mean, there are plenty of legal mechanisms here. All appellant is asking is that the court consider the constitutionality of this legislation. It is not constitutional on any theory of a government of limited and enumerated powers. Thank you. All right. Thank you very much. Unless Judge Hamilton wants to break, we're going to come down. Greek Council then proceed to our final case.
judges: Roger L. Gregory, Pamela A. Harris, Clyde H. Hamilton